## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 06 2017, 7:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Alan D. Wilson
Kokomo, Indiana

ATTORNEY FOR APPELLEE

Matthew J. Elkin
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Guardianship of:<br>Helen Kinney Morris,<br><br>Mary M. Kinney and<br>Patrick Kinney,<br><br>*Appellants-Respondents,*<br><br>v.<br><br>Paul Kevin Kinney,<br><br>*Appellee-Petitioner.* | July 6, 2017<br><br>Court of Appeals Case No.<br>34A02-1702-GU-264<br><br>Appeal from the Howard Superior Court<br><br>The Honorable Brant J. Parry, Judge<br><br>Trial Court Cause No.<br>34D02-1407-GU-23 |

**Robb, Judge.**

# Case Summary and Issue

[1] Helen Kinney Morris is a ninety-year-old widow with six adult children: Michael Kinney, Bridget Aaron, Paul Kevin Kinney ("Kevin"), Patrick Kinney, Mary Kinney ("Molly"), and Gabrielle Kinney. In 2004, Helen executed a durable power of attorney appointing Kevin and Molly as her attorneys in fact. Years later, Helen developed dementia leading four of her children, Kevin, Michael, Bridget, and Gabrielle, to believe a guardianship was necessary to care for Helen. The trial court found Helen to be incapacitated and appointed all six siblings as co-guardians over different areas of her life. Following a first appeal by Molly and Patrick, we affirmed the trial court's determination that Helen is incapacitated but reversed and remanded with instructions for the trial court to determine whether a guardianship is necessary in light of Helen's 2004 durable power of attorney, and, if so, to give consideration to the matters listed in Indiana Code section 29-3-5-5 and Helen's wishes. On remand, the trial court entered a new order affirming its prior order establishing a guardianship. Molly and Patrick again appeal, raising two issues for our review, which we consolidate and restate as: whether the trial court abused its discretion in establishing a guardianship. Concluding the trial court abused its discretion in determining a guardianship is necessary, we reverse and remand with instructions for the trial court to vacate its order establishing a guardianship over Helen.

# Facts and Procedural History

[2]     We succinctly summarized the facts of this case in its prior appeal:

> In March 2004, Helen executed a durable power of attorney
> appointing two of her children—Kevin "or" Molly—as her
> attorneys in fact. Helen selected Kevin because he had always
> helped her with her business affairs and Molly because the two of
> them were close. The power of attorney gave Kevin and Molly
> powers with regard to real-property transactions; tangible
> personal-property transactions; bond, share, and commodity
> transactions; banking transactions; business-operating
> transactions; insurance transactions; beneficiary transactions; gift
> transactions; fiduciary transactions; claims and litigation; family
> maintenance; benefits from military service; records, reports, and
> statements; estate transactions; health-care powers; consent or
> refusal of health care; delegating authority; and all other possible
> matters and affairs affecting Helen's property. The power of
> attorney specifically provided that it was "not affected by the fact
> that [Helen] might become incompetent hereafter, but shall
> remain in full force and effect."
>
> Helen was later diagnosed with mild to moderate dementia.
> Helen's dementia has remained stable since around 2011 due to
> medication. Helen has been able to stay in her home because of
> around-the-clock help from family. This help has included
> providing all meals for Helen, taking care of her home, helping
> her bathe, doing her laundry, taking her to doctor appointments,
> doing her shopping, paying her bills, and having someone spend
> every night with her.
>
> For most of Helen's children's lives, the family was close knit,
> with each child having a good relationship with their mother.
> But things changed after a tornado damaged Helen's house in
> November 2013 and the siblings disagreed on whether to
> remodel Helen's bathroom. The siblings took sides, with Molly
> and Patrick believing that Helen's bathroom did not need to be
> remodeled and Michael, Bridget, Kevin, and Gabrielle believing
> that it did. After speaking with Molly, Helen decided not to have
> her bathroom remodeled. . . .

On July 28, 2014, Kevin filed a petition to appoint guardians for Helen because she "cannot care for herself nor make decisions on her own behalf." He asked the trial court to appoint him and three of his siblings—Michael, Bridget, and Gabrielle—as co-guardians. The trial court appointed a guardian ad litem, who met with Helen as well as all six siblings. In its report, the guardian ad litem noted that Helen did not want a guardian. Although Helen recognized that she needed assistance, she was "happy with Molly and Pat[rick] and the way they are caring for her." The guardian ad litem concluded that a guardianship was not necessary because there was a valid power of attorney that "seem[ed] to be working appropriately as it relates to Helen's care and her overall well being." In the event that the court appointed a guardian, however, the guardian ad litem recommended "Molly and/or Pat[rick]."

The trial court held a hearing on Kevin's guardianship petition in August 2015. . . . Molly testified that although her mother had memory problems and could not do a lot of things by herself—like bathing, driving, yard work, shopping, cooking, and laundry—she could take care of her affairs with assistance and do other things by herself, like change her clothes, use the restroom, brush her hair and teeth, and put on her glasses and hearing aids. In contrast, the other four siblings testified that Helen's memory problems were worsening and had placed her in situations in which she was endangered, that she could not take care of herself or her business affairs by herself, that Molly and Patrick were isolating Helen from them, and that they did not know anything about their mother's finances or health. The guardian ad litem testified that although Helen was not able to take care of herself or her business affairs without assistance, Helen was getting that assistance from Molly and Patrick. . . .

In October 2015, the trial court issued an order in which it found that Helen was incapacitated. Specifically, the court found that Helen "is incapacitated for [the] reason that she cannot adequately care for her person and estate without assistance." The court also found that guardians were necessary. In determining what sibling to appoint as guardian, the court found that the "foremost" consideration was Helen's best interests and welfare. The court also considered "Helen's happiness in her remaining years" and "the best way to attempt to repair the

family dynamic and the children's relationships with Helen and with each other." Based on these considerations, the court found that co-guardians—as opposed to one guardian—were necessary. Accordingly, the court appointed all six siblings as co-guardians. Each sibling was appointed guardian over a specific area of Helen's life. . . .

Molly and Patrick declined their appointments, and in January 2016 the trial court transferred Patrick's guardianship responsibilities to Kevin and Molly's guardianship responsibilities to Bridget, Gabrielle, and Michael.

*In re Guardianship of Morris*, 56 N.E.3d 719, 721-23 (Ind. Ct. App. 2016). Thereafter, Molly and Patrick appealed. This court upheld the trial court's determination Helen is incapacitated but reversed and remanded with instructions for the trial court to determine whether any guardians are necessary in light of the 2004 power of attorney. *Id.* at 725. On remand, the trial court held a hearing and later issued its order leaving its prior orders in full force and effect. The trial court's order stated as follows:

### ORDER FOLLOWING APPELLATE DECISION

* * *

1. The Court of Appeals remanded this cause for the Court to consider the priority of who may be considered for appointment as guardian pursuant to I.C. 29-3-5-5, including Helen's wishes and her existing attorneys in fact (Kevin and [Molly]).

2. The following are entitled to consideration for appointment as a guardian under section 4 [IC 29-3-5-4] of this chapter in the order listed:

    (1) A person designated in a durable power of attorney.

* * *

(4) An adult child of an incapacitated person.

* * *

3. With respect to persons having equal priority, the court shall select the person it considers best qualified to serve as guardian. . . .

4. I.C. 20-3-5-4 indicates that "the Court shall appoint as guardian a qualified person most suitable and willing to serve . . ."

5. The first person to be considered would be a person who has been appointed a power of attorney for the incapacitated person. A person who has been appointed power of attorney *shall* be appointed guardian unless good cause or disqualification is shown.

6. In this case, Helen executed a durable power of attorney naming both Kevin *and* [Molly] as her attorneys in fact. Helen appointed both children as her attorneys in fact. It is the Court's opinion that Helen appointed them together with the intention that they would work together as the attorneys in fact.

7. Kevin and [Molly] are opposing parties in this cause of action. Kevin indicated that he could attempt to communicate with [Molly]. [Molly] indicated that she did not believe that she and Kevin could communicate.

8. Additionally, since the initial disagreement concerning Helen's restroom and the subsequent fallout between the siblings, Helen had virtually no contact with four of the children. During this time, Helen was in the most contact with [Molly] and Patrick. [Molly] and Patrick had "control" over Helen, and during that period, Helen ceased contact with her children that she had been very close to for many decades.

9.  It would not be in the best interest of the ward to force Kevin and [Molly] to serve a[s] co-guardians over all aspects of Helen's life. Therefore, although they had been named as co-attorneys in fact by Helen, the Court declines to appoint them as co-guardians over Helen.

10. After considering Helen's wishes and the existing attorneys in fact, the Court determines that the Court's prior Orders of October 14, 2015 and January 25, 2016 shall remain in full force and effect.

Appendix to Appellants' Brief, Volume II at 21-23 (citation omitted). Molly and Patrick now appeal.

# Discussion and Decision

## I. Standard of Review

[3] All findings and orders of the trial court in guardianship proceedings are within its discretion. *In re Guardianship of V.S.D.*, 660 N.E.2d 1064, 1066 (Ind. Ct. App. 1996). Thus, we will review those findings under an abuse of discretion standard. *Id.* We will find an abuse of discretion only when the decision of the trial court is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.*

## II. Necessity of the Guardianship

[4] As an initial matter, we address Molly and Patrick's argument the trial court failed to follow this Court's decision on remand. *See In re Guardianship of Morris*, 56 N.E.3d at 724-25. In *Morris*, the trial court established a guardianship over Helen and appointed all six of her children as co-guardians.

Molly and Patrick appealed the trial court's determination a guardianship was necessary. We affirmed the trial court's determination that Helen was incapacitated; however, we also recognized "if an incapacitated person's attorney in fact is different than the person's guardian, the attorney in fact remains in control unless the trial court holds a hearing and orders the guardian to revoke the power of attorney." *Id.* at 724 (internal quotation and citation omitted). On this point, we remanded the case for the trial court to determine whether guardians are necessary in light of the fact Helen executed a valid power of attorney and the "[co-]guardians do not have any power with respect to Helen's property and health care." *Id.*

[5] On remand, the trial court issued an order stating, "The Court of Appeals remanded this cause for the Court to consider the priority of who may be considered for appointment as guardian . . . ." App. to Appellants' Br., Vol. II at 21. The trial court's order only addresses who may be appointed guardian and their priority, not whether a guardianship is necessary. Although the priority of who may be appointed guardian is a determination the trial court eventually may have to make, our opinion remanded this case for the trial court to determine whether a guardian is necessary at all in light of the fact Helen already executed a valid power of attorney and her attorneys in fact held all authority with respect to her property and health care. The record and the trial court's order do not demonstrate the trial court considered whether a guardianship is necessary consistent with our prior opinion.

[6]     In any event, we conclude a guardianship is not necessary in this case. Indiana Code section 29-3-5-3(a) provides a trial court "shall appoint a guardian" if it finds that (1) the person for whom the guardian is sought is an "incapacitated person" *and* (2) the appointment of a guardian "is necessary as a means of providing care and supervision of the physical person or property of the incapacitated person." However, in regard to the appointment of a guardian when a power of attorney has already been executed, Indiana Code section 30-5-3-4 states:

> A guardian does not have power, duty, or liability with respect to property or personal health care decisions that are subject to a valid power of attorney. A guardian has no power to revoke or amend a valid power of attorney unless specifically directed to revoke or amend the power of attorney by a court order on behalf of the principal. A court may not enter an order to revoke or amend a power of attorney without a hearing. Notice of a hearing held under this section shall be given to the attorney in fact.

Ind. Code § 30-5-3-4(b) (1991). Therefore, if an incapacitated person's attorney in fact is different than that person's guardian, the "attorney in fact remains in control unless the trial court intervenes[,]" holds a hearing, and orders the guardian to revoke the power of attorney. *In re Guardianship of L.R.*, 908 N.E.2d 360, 365 (Ind. Ct. App. 2009).

[7]     The trial court's order establishing a guardianship over Helen appointed all six of her children as guardians. The trial court appointed Bridget as guardian over Helen's "health care needs and personal hygiene"; Molly as guardian over

Helen's personal finances; Michael, a priest, as guardian over Helen's "spiritual needs and affairs";[1] and Kevin and Patrick as co-guardians over Helen's "personal care and business affairs." App. to Appellants' Br., Vol. II at 45-46. However, pursuant to Helen's power of attorney, Molly and Kevin already hold all authority and power with respect to Helen's health care and property. Helen's power of attorney further states, "this Power of Attorney shall continue in full force and effect until revoked. I further state that this Power of Attorney shall not be affected by the fact that I might become incompetent hereafter, but shall remain in full force and effect." *Id.* at 24. Although the trial court had the authority to order the guardians to revoke or amend Helen's power of attorney following a hearing, it did not do so, leaving Helen with two attorneys in fact and six co-guardians, a situation which will only serve to create confusion and further division among Helen's children as to who holds actual authority with respect to Helen's needs and care. The current state of affairs essentially defeats the purpose of a guardianship, as it would not serve the welfare of Helen.[2]

[8] Finally, we note the trial court was concerned with Molly's testimony she did not think she could work with Kevin as Helen's co-attorneys in fact. Molly did not resign or decline her designation as an attorney in fact, but stated she did

---

[1] Gabrielle was appointed co-guardian over Helen's spiritual needs and affairs because Michael lives in Texas. *See* App. to Appellants' Br., Vol. II at 46.

[2] We note, as we did in our prior opinion, that it appears Helen sent a letter to Kevin in May of 2014 revoking his power of attorney. *See In re Guardianship of Morris*, 56 N.E.3d at 724 n.4. Helen then allegedly executed a new power of attorney naming only Molly as her attorney in fact. However, both parties proceed in this appeal as if the 2004 power of attorney naming Kevin or Molly as attorneys in fact is controlling.

not think she could work with Kevin "as a result of him bullying, trying to intimidate, antagonizing me anytime we have an encounter." Transcript, Volume II at 17. Indiana Code section 30-5-4-3 authorizes the appointment of more than one attorney in fact. It provides that unless the power of attorney states otherwise, "if more than one (1) attorney in fact is named, each attorney in fact may act independently of the other attorney in fact in the exercise of a power or duty." Ind. Code § 30-5-4-3(a). Therefore, unless and until Helen's 2004 power of attorney is revoked or amended, all authority regarding her property and health care lies with Kevin and Molly, who may act independently of each other.

[9] We conclude the trial court's determination that a guardianship is necessary, without first revoking or amending Helen's power of attorney, and appointment of all six of Helen's children as co-guardians is clearly against the logic and effect of the facts and circumstances before the court.

# Conclusion

[10] The trial court abused its discretion in establishing a guardianship over Helen. Accordingly, we reverse and remand with instructions for the trial court to vacate its order establishing a guardianship.

[11] Reversed and remanded.

Vaidik, C.J., and Bailey, J., concur.