# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 28 2018, 9:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Bryan L. Ciyou
Darlene R. Seymour
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

John A. Kraft
Young, Lind, Endres & Kraft
New Albany, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In re the Guardianship of William Henry Broughton (Alleged Incapacitated Adult),

Dennis Broughton, Kevin Broughton, and Otis Broughton,[1]

*Appellants-Cross-Petitioners,*

v.

Warren Broughton,

*Appellee-Petitioner.*

August 28, 2018

Court of Appeals Case No. 18A-GU-44

Appeal from the Crawford Circuit Court

The Honorable Joseph L. Claypool, Special Judge

Trial Court Cause No. 13C01-1612-GU-25

---

[1] Connie Broughton Manley ("Connie") did not file a brief, and counsel did not file an appearance on her behalf. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal.

**Mathias, Judge.**

The Crawford Circuit Court appointed Warren Broughton ("Warren") as guardian over his elderly father, William Henry Broughton ("Henry"). Thereafter, Warren's three brothers, Dennis Broughton, Kevin Broughton, and Otis Broughton (collectively the "Brothers"), filed objections to the appointment. The trial court held a hearing on the Brothers' objections after which it denied the objections and confirmed that Warren would remain Henry's guardian. The Brothers now appeal, claiming that the trial court erred in appointing Warren as Henry's guardian. We affirm.

## Facts and Procedure

Henry is the ninety-year-old father of Warren, the Brothers, and their sister Connie. Henry owns approximately 350 acres of land (the "Farm") that is, in part, used to raise cattle for sale. The Farm also includes several homes that are used as residences for Henry, Warren and his wife, and Warren's son Will. Warren has lived and worked on the Farm with his father for the past thirty or forty years.[2] Henry has not had much of a relationship with his other children since he divorced his wife, and their mother, approximately ten years ago.

On March 15, 2010, Henry signed a durable power of attorney ("POA") making Warren his attorney-in-fact and health care representative. On the same

---

[2] Warren's son Will also works on the Farm. Neither Warren nor Will has ever received payment from working on the Farm. *See* Tr. pp. 112–14

day, Henry transferred ownership of the Farm to Warren in fee simple, reserving a life estate for himself. Henry did not want the Farm sold upon his death, and he believed Warren would take care of it and keep it in operation.

[4] In 2016, Henry began exhibiting concerning behavior. Warren explained that Henry "was doing a lot of stuff that was going to get himself injured, or some neighbors injured, or somebody on the road." *Id.* at 94. At the time, Henry was living with Mary Morgan ("Mary") who lived directly across the street from the Farm. She too was concerned for Henry because "he was confused a lot of times[,]" and there were occasions where he would urinate on himself and go to bed without cleaning himself up. *Id.* at 206–07. As a result of Henry's deteriorating condition, on December 5, 2016, Warren filed an application for Henry's emergency detention. Henry was taken to a hospital, and he was later transferred to a nursing home where he remains today.

[5] Henry and Warren own a joint checking account together (the "Checking Account"), and Henry owns a savings account (the "Savings Account") which is payable on death to Warren. Funds for the Checking Account come from Henry's pension and the sale of cattle on the Farm. Whenever Henry felt too much money was in the Checking Account, he would transfer money into the Savings Account.

[6] On December 9, 2016, Warren, acting as Henry's POA, wrote a check from the Checking Account for $31,000 payable to Henry. Warren then transferred the funds into a Broughton Farms, LLC account owned by Warren and his wife.

The same day, Warren also, acting as Henry's POA, wrote a check from the Savings Account for $234,632.37 payable to Henry. Warren transferred this amount into a separate savings account owned by Warren and his wife. He explained that "this was [] the same time my sister had robbed our accounts, and we knew that there was a possibility of her doing more, so we put it in a safe spot."[3] Tr. p. 82.

[7]     On December 13, 2016, Warren filed a petition to establish a permanent guardianship over Henry's person and estate and to name him as guardian. On December 15, the court entered an order that established a temporary guardianship over Henry and appointed Warren temporary guardian. On December 27, Connie filed a petition to set aside the court's December 15 order. The court granted Connie's petition that same day, and it set the matter for hearing. On December 29, the court appointed a Guardian Ad Litem to act on Henry's behalf.

[8]     On March 6, 2017, Warren amended his December 13 petition for appointment of a permanent guardian. The trial court held a hearing on Warren's petition on April 13. At the conclusion of the hearing, the trial court named Warren Henry's guardian and explained, "I'm going to take this under advisement, and we'll set another hearing date shortly after I get some more information about what's going on in this thing." Tr. p. 16. The court also noted that "Henry is of

---

[3] Connie had written a check for $16,450 out of the Checking Account, and she was subsequently ordered by the court to repay those funds. *See* Appellee's App. p. 5–6.

an age where I know that sometimes you need some help, and we want to make sure that help is given, whether or not that be in a guardianship or otherwise is what this Court . . . needs to determine." *Id.* at 16–17. On April 18, the court issued an order reflecting its remarks in which it determined a guardianship was necessary. The court then "temporarily appointed" Warren as Henry's guardian "**until further ORDER of this Court.**"[4] Appellee's App. p. 4 (emphasis in original).

On April 25, 2017, the Brothers, *pro se*, filed objections to Warren's appointment as Henry's guardian.[5] Each objection alleged, "[e]vidence supports that [Henry] is a victim of abuse, coercion, and theft. I will not tolerate this injustice any longer, crimes have been committed." *See* Appellants' App. pp. 66–68. Warren filed a motion to strike the Brothers' objections on May 23, and the Brothers, now represented by counsel, filed a motion in opposition to strike the objections on June 2.

On June 30, the Brothers filed a motion for an order seeking to compel Warren to file an inventory of guardianship property to comply with Indiana Code section 29-3-9-5. On August 15, the court directed Warren to file an accounting within ten business days and also set a hearing for September 26. Warren filed

---

[4] The trial court also noted, prior to its findings, that it was taking "the matter under advisement for issuance of a further Order, as may be necessary concerning the guardianship of the estate and person of [Henry]." Appellee's App. p. 3.

[5] Kevin Broughton's *pro se* objection was filed on May 8, but it contained identical language.

several documents titled "Guardian's Accounting" on September 7. A hearing on the Brothers' objections and the outstanding issues was held on September 26, during which Warren, the Brothers, Mary, and Henry all testified.

On November 6, the trial court issued findings of fact and conclusions of law in which it denied Brothers' objections and confirmed its appointment of Warren as guardian over Henry and his estate. The Brothers filed a motion to correct error on December 1, which the trial court denied on December 22. The Brothers now appeal.

## Standard of Review

On appeal, we afford trial courts a great deal of deference in family law matters because of their extended face-to-face interactions with the parties. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). Trial judges are able to assess the credibility and character of the parties involved, and, because of this evidence, they are in a superior position to determine the best interests of parties. *Id.* As such, we review a trial court's determinations relating to a guardianship for an abuse of its discretion. *In re Guardianship of Morris*, 56 N.E.3d 719, 723 (Ind. Ct. App. 2016). This occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances presented. *Id.*

At Warren's request, the trial court entered findings of fact and conclusions of law. In this scenario we apply a two-tiered standard of review, determining first whether the evidence supports the findings and second whether the findings support the judgment. *Sexton v. Sexton*, 970 N.E.2d 707, 710 (Ind. Ct. App.

2012), *trans. denied*. We will not set aside a trial court's findings unless they are clearly erroneous, meaning that our review of the record leaves us firmly convinced that a mistake has been made. *Id.* We do not defer to the trial court's conclusions of law and will find clear error if the court has applied an incorrect legal standard. *Id.*

## Discussion and Decision

[14]    The Brothers allege that the trial court erred by appointing Warren as Henry's permanent guardian.[6] Indiana Code section 29-3-1-6 defines a guardian as "a person who is a fiduciary and is appointed by a court to be a guardian or conservator responsible as the court may direct for the person or the property of an incapacitated person[.]" Once appointed, a guardian has a statutory duty to manage the property for the ward's best interest, and he is responsible to protect and preserve the property of the protected person. *See* I.C. § 29-3-8-3(2); *Wells v.*

---

[6] Warren argues that the Brothers' appeal is untimely because "Warren was appointed as guardian, in a permanent fashion, over the person and estate of Henry" in the trial court's April 18, 2017 order, and entered on the CCS on May 2, 2017. Appellee's Br. at 10. And thus, Warren contends that the Brothers had until June 1, 2017, to file their notice of appeal, which was not filed until January 10, 2018. Warren filed a motion to dismiss the Brothers' appeal on these same grounds on June 1, 2018, which our motions panel denied on July 13, 2018. Although it is well settled that a writing panel may reconsider a ruling by the motions panel, we decline to do so here. *Simon v. Simon*, 957 N.E.2d 980, 987 (Ind. Ct. App. 2011). The trial court noted in its April 18 order that a guardian for Henry "should be appointed temporarily until further Order of the Court determining that a guardianship is necessary[.]" Appellee's App. pp. 2–3. And it then appointed Warren as Henry's guardian "**until further ORDER of this Court.**" *Id.* at 5 (emphasis in original). It is clear from the trial court's language that it anticipated and planned for future proceedings relating to the guardianship over Henry. *See Bacon v. Bacon*, 877 N.E.2d 801, 804 (Ind. Ct. App. 2007) (holding that a final judgment ends a particular case and leaves nothing for future determination), *trans. denied*. Moreover, the Brothers filed *pro se* objections to Warren's appointment in May and June of 2017, which they were free to do at any time. Therefore, it is the trial court's November 6, 2017 order denying the Brothers' objections that is the basis for their appeal. The Brothers filed a motion to correct error which the trial court denied on December 22, 2018, and the Brothers' initiated this appeal on January 10, 2018, well before their deadline. For these reasons, the Brothers' appeal is not untimely.

*Guardianship of Wells*, 731 N.E.2d 1047, 1051–52 (Ind. Ct. App. 2000), *trans. denied*.

[15] The guardian must also conserve any property of the protected person in excess of the protected person's current needs. I.C. § 29-3-8-3(3). Thus, in order to adequately perform his or her responsibilities, the guardian must maintain sufficient contact with the protected person to know of this person's capabilities, disabilities, limitations, needs, opportunities, and physical and mental health. *See* I.C. § 29-3-8-1(a)(1); (b)(1).

[16] Here, the Brothers contend that Warren is not the proper person to care for Henry and his estate because they allege that Warren has breached his fiduciary duty as a guardian in two ways: (1) by failing to provide an inventory of Henry's estate as required by statute; and (2) by transferring funds from Henry's accounts to his own personal accounts without authority or cause. *See* Appellants' Br. at 12–16. We address each contention in turn.

*1. Failing to Provide an Inventory Required by Statute*

[17] Under Indiana Code section 29-3-9-5, a guardian is required to "file with the court a complete inventory of the property subject to the guardian's control" within ninety days after appointment.[7] Indiana Code section 29-1-12-1 explains that the inventory must:

---

[7] The timeframe is thirty days for a temporary guardian. Ind. Code § 29-3-9-5.

(1) consist of at least one (1) written instrument;

(2) indicate the fair market value of each item of property; and

(3) include a statement of all known liens and other charges on any item.

(b) Property listed in the inventory required by subsection (a) must be classified as follows:

(1) Real property, with plat or survey description, and if a homestead, designated as a homestead.

(2) Furniture and household goods.

(3) Emblements and annual crops raised by labor.

(4) Corporate stocks including the class, the par value or that it has no par value, if preferred stock the dividend rate.

(5) Mortgages, bonds, notes or other written evidences of debt or of ownership described by name of debtor, recording data, and other identification.

(6) Bank accounts, money, and insurance policies if payable to the estate of the decedent or to the decedent's personal representative.

(7) All other personal property accurately identified, including the decedent's proportionate share in any partnership, but no inventory of the partnership property shall be required.

*Id.* at §§ (a); (b).

[18] On June 30, 2017, the Brothers filed a motion for an order from the court seeking to compel Warren to file an inventory in compliance with the above statutes. The trial court issued an order on August 15, directing Warren to "file an Accounting . . . with the Court within ten business days[.]" Appellants' App. p. 82. On September 7, Warren filed a "Guardian's Accounting[,]" that included four bank statements from Henry's First Harrison Bank account,[8] copies of checks written out of Henry's accounts to pay bills, and billing statements and receipts from several providers. *See* Appellee's App. pp. 14–46.

[19] The trial court remarked that Warren's provided accounting "appears to be an income statement. It's all [Henry's] income that's coming in and the outflow of his income. However, there's no balance sheet. There's nothing in there about the assets of the Estate." Tr. p. 22. The court then stated, "well we need to find out what assets are claimed to be in the guardianship and are not claimed to be in the guardianship and make a determination of that fact." *Id.* at 28. However, our review of the record does not indicate that the accounting was ever amended, or that a separate inventory was ever filed.

[20] Although we agree with the Brothers that Indiana law requires Warren to file an inventory in compliance with Section 29-3-9-5, we do not believe that a failure to do so necessarily implies that Warren "is not the best person available to serve as Henry's guardian." Appellants' Br. at 15. Initially, we note that the

---

[8] The statements covered April 15, 2017 through August 15, 2017.

Brothers have failed to cite to any authority to support their position. *See* Ind. Appellant Rule 46(8)(a). Indeed, a guardian has a continuing relationship with the court and a fiduciary responsibility to real and potential beneficiaries of the estate of the ward. At any time, whether on motion, or *sua sponte*, the court may direct or order the guardian to provide an accounting with specific directions as to its contents. Moreover, the Brothers have failed to demonstrate how they have been prejudiced by Warren's deficient inventory filing. Absent statutory authority, we will not conclude that the failure to file an inventory under Sections 29-3-9-5 and 29-1-12-1 automatically renders an individual unsuitable to serve as guardian. *See Wells*, 731 N.E.2d at 1050.

[21] There is substantial evidence before us that demonstrates Warren is more than suitable to serve as guardian over Henry and Henry's estate. Warren has a close relationship with Henry, and they have worked on the Farm together for approximately forty years. Since Henry has been in a nursing home, Warren has visited him every day, and he has paid Henry's bills and kept the farm running in Henry's absence. Although the Brothers alleged in their objections to Warren's appointment that Henry was the victim of abuse, coercion and theft, none of the Brothers has testified to any personal knowledge substantiating these claims, and Henry has denied them outright. Henry has also testified that Warren is "the only one that has ever helped me." Tr. p. 221. And when asked if he believed it was in his best interest that Warren continue as guardian, Henry responded, "The only way." *Id.* at 224.

Therefore, we acknowledge that Warren has failed to file an inventory in compliance with Section 29-3-9-5, and we remand with instructions for the trial court to direct Warren to file a proper inventory. However, we conclude that Warren's failure to do so does *not* on its own render him incapable of serving as Henry's guardian.

## 2. Transferring of Funds

On December 9, 2016, Warren, acting as Henry's POA, wrote a check for $31,000 in Henry's name from the Checking Account and deposited the amount into a Farm account owned by Warren and his wife. The same day, Warren also wrote a check for $234,632.37 in Henry's name from the Savings Account and deposited the amount into a separate savings account owned by Warren and his wife. The Brothers allege that "[t]here was no evidence that the removal of these funds was necessary for Henry's care or protection[,]" and therefore Warren's "actions constitute a conflict of interest between Warren's interest and Henry's interest; breach Warren's fiduciary duty to Henry; demonstrate a failure to act on Henry's behalf; and contravene Warren's obligation to conserve Henry's property." Appellants' Br. 16. We disagree.

Warren testified that he transferred the funds from Henry's accounts[9] because his sister Connie had recently written herself a check for $16,450 out of the Checking Account, and "we knew that there was a possibility of her doing

---

[9] The Checking Account is jointly owned by Henry and Warren, and Warren owns a right of survivorship in the Savings Account.

more, so we put it in a safe spot." Tr. p. 82. Warren explained that Connie "has a history of doing exactly what she did by removing money from the account. She has a history that goes way back with that." *Id.* at 85. Importantly, Connie was directed to return the $16,450 in the trial court's April 18 order. Appellee's App. p. 5–6.

[25] Moreover, Warren explained that the money he transferred "went into a savings account, which is still intact and growing interest every day." Tr. p. 83. In addition, Warren has paid all of Henry's bills since Henry was placed in a nursing home. For these reasons, Warren did not breach his fiduciary duty as Henry's guardian when he transferred funds out of the Checking and Savings accounts on December 9, 2016.

## Conclusion

[26] Based on the facts and circumstances before us, the trial court did not err when it denied the Brothers' objections, nor did it err when it confirmed Warren as guardian over Henry's person and estate. In these respects, we affirm the judgment of the trial court. However, we remand with instructions for the trial court to order Warren to provide a proper inventory of guardianship property in compliance with Indiana Code section 29-3-9-5. Affirmed and remanded for proceedings consistent with this opinion.

Bailey, J., and Bradford, J., concur.