## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 10 2018, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert Owen Vegeler
Vegeler Law Office LLC
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Douglas E. Johnston
Angelica N. Fuelling
Tourkow, Crell, Rosenblatt &
Johnston, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Guardianship of Zachary Johnson:

Adam D. Johnson,

*Appellant-Respondent,*

v.

Sarah Oswalt,

*Appellee-Petitioner.*

December 10, 2018

Court of Appeals Case No.
18A-GU-816

Appeal from the
Allen Superior Court

The Honorable
Phillip E. Houk, Magistrate

Trial Court Cause No.
02D09-1412-GU-242

**Kirsch, Judge.**

[1] Adam D. Johnson ("Adam") appeals the trial court's order that removed him as guardian for his adult son, Zachary Johnson ("Zach"), and that appointed Sarah Oswalt ("Sarah"), Zach's mother, as Zach's successor guardian. Adam raises the following issue: whether the trial court abused its discretion in terminating his role as guardian and appointing Sarah as permanent successor guardian.

[2] We affirm.

## Facts and Procedural History

[3] Zach is unable to manage his personal and financial affairs because he suffers from Autism Spectrum Disorder, depression, anxiety, ADHD, and Smith Lemli Opitz Syndrome. *Tr. Vol. 2* at 41, 52-53; *Appellant's App. Vol. 2* at 16. Zach turned eighteen years of age in December of 2014, so in May of 2015, Adam and Sarah agreed that Adam would serve as Zach's guardian. *Id.* at 19-23.

[4] Sarah later wanted to increase her parenting time, so in February of 2016, she filed a motion to modify parenting time. *Id.* at 24. The trial court ordered mediation, but before mediation could begin, Adam moved with Zach to North Carolina. *Tr. Vol. 2* at 56. Adam neither consulted Sarah about the move, nor sought or received permission from the trial court for the move. *Id.* at 56, 129. Adam's move to North Carolina hindered Sarah's efforts to communicate with Zach. *Id.* at 57. In the nearly one year that Zach was in North Carolina, Adam did not procure services for Zach. *Id.* at 97, 125, 130-31.

[5]     On March 2, 2017, Sarah filed a verified petition to remove Adam as guardian. *Appellant's App. Vol. 2* at 6, 26-27. The trial court issued an interim order requiring Adam to facilitate contact between Sarah and Zach. *Id.* at 28- 30. It also ordered Adam and Sarah to coordinate an Indiana Trial Rule 35 evaluation of Zach and reschedule mediation, which the trial court said could be conducted by telephone. *Id.* at 29.

[6]     Adam failed to have Zach evaluated as directed by the trial court and did not participate in any mediation sessions. *Tr. Vol. 2* at 130-31. He also did not allow Sarah to visit Zach. *Id.* at 124-25. Therefore, Sarah filed a motion for immediate temporary change of guardianship, which the trial court heard on an emergency basis without Adam attending the hearing. *Appellant's App. Vol. 2* at 9; 31-33. Citing Adam's disregard for its orders, the trial court suspended Adam's authority as guardian and appointed Sarah as temporary guardian. *Id.* at 34-35. Specifically, the trial court found that "[Adam's] conduct in ignoring the court's orders and preventing the mother/son relationship from advancing is directly and adversely affecting the best interests of [Zach] and causing immediate and substantial injury to him." *Id.*

[7]     Sarah then travelled to North Carolina to bring Zach back to Indiana. *Tr. Vol. 2* at 57. Because Zach had not received services for nearly one year, Sarah immediately tried to coordinate services for Zach, even as she was driving back to Indiana. *Id.* at 58. She eventually arranged services with Todd Clark ("Clark"), a behavioral therapist, and Taylor Hartsock ("Hartsock"), a day

program supervisor at Passages Incorporated, a not-for-profit organization that serves individuals with developmental disabilities. *Id.* at 8; 18-20.

[8] Once back in Indiana, Sarah made sure that Zach immediately received medical and dental care. *Id.* at 62-64. Further, she made efforts to maintain a positive relationship between Zach and Adam by arranging visits and regular communication through text messaging. *Id.* at 64.

[9] At the hearing on Sarah's verified petition to remove Adam as guardian and appoint her as successor guardian, Clark, Hartsock, and Michael Setlak ("Setlak"), Zach's guardian ad litem, testified about Sarah's efforts to obtain services for Zach, the appropriateness of her home, her qualities as a parent, her efforts to maintain a relationship between Zach and Adam, and whether it was in Zach's best interests for her to become Zach's permanent guardian. For instance, when Clark was asked about Sarah's interaction with Zach, he testified that she was "[e]xcellent... she was very on the ball it seemed to me." *Id.* at 10. Clark also testified that Sarah was an excellent parent: "she would be in the top of the parents I have met, honestly." *Id.* Clark had no concerns about Sarah's small home[1] or Zach's interactions with his siblings. *Id.* at 11, 17. Hartsock's testimony about Sarah was also positive. Hartsock said that Sarah

---

[1] The residence is about 1100 square feet and houses four people (five people when Sarah's boyfriend spends the night) and six pets. *Tr. Vol 2* at 71, 76-77.

was "very involved" in the intake process and that "she kept in communication [and was] very pleasant." *Id.* at 20.

[10] Donovan Martin ("Martin"), a licensed mental health counselor, also testified, stating that his testing of Sarah had shown that reunifying her with Zach was appropriate. *Id.* at 33-34. Martin also attested to Sarah's ability to procure appropriate services for Zach, stating that she was able to obtain services "faster than I have seen a lot of people do it." *Id.* at 42. Setlak also praised Sarah's ability to arrange services for Zach, testifying that Sarah did more in the preceding four or five months to procure services for Zach than Adam had done over a fifteen-month period. *Id.* at 140. When asked about the possibility of letting Adam resume his role as guardian, Setlak worried that Adam would once again cut off contact between Zach and Sarah. *Id.* at 140-41. Thus, Setlak recommended that the trial court appoint Sarah as Zach's permanent guardian. *Id.* at 144.

[11] In its final order addressing Sarah's verified petition to remove Adam as Zach's guardian and appoint her as successor guardian, the trial court found and ordered as follows:

> 3. [Sarah], in a relatively short time, has procured services and implemented a broad strategy to assist in [Zach's] development and increasing [Zach's] self-reliance. The continued utilization of these services and implementation of this strategy is in [Zach's] best interests.

> 4. [Sarah] has demonstrated a high degree of cooperation regarding [Zach's] visitation with . . . [Adam].

Therefore, the Court discharges [Adam] as Guardian and appoints [Sarah] to serve as the Successor Guardian of [Zach].

*Appellant's App. Vol. 2* at 14-15. Adam now appeals.

# Discussion and Decision

A trial court is vested with discretion in making determinations as to the guardianship of an incapacitated person. *See* Ind. Code § 29-3-2-4; *In re Guardianship of Atkins,* 868 N.E.2d 878, 883 (Ind. Ct. App. 2007), *trans. denied.* This discretion extends to both its findings and its order. [*In re*] *Atkins,* 868 N.E.2d at 883. Thus, we apply the abuse-of-discretion standard to review the trial court's findings and order. *Id.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances presented. *Id.*

*In re Guardianship of Morris*, 56 N.E.3d 719, 723 (Ind. Ct. App. 2016).

[12] "The trial court's paramount consideration in making its determination of the person to be appointed guardian is the best interest of the incapacitated person." *In re Atkins*, 868 N.E.2d at 883. A court "may remove a guardian on its own motion or on petition of the protected person or any person interested in the guardianship, after notice and hearing, on the same grounds and in the same manner as is provided under [Indiana Code section] 29-1-10-6 for the removal of a personal representative." Ind. Code § 29-3-12-4(a). These grounds include the failure "to perform any duty imposed by law or by any lawful order of the court, or [if the guardian] has ceased to be domiciled in Indiana." Ind. Code § 29-1-10-6(b). With the approval of the trial court, a guardian may "change the physical presence of the protected person to another place in Indiana or to

another state if the court finds that such a change is in the best interests of the protected person." Ind. Code § 29-3-9-2.

[13] Here, the trial court did not abuse its discretion in removing Adam as Zach's guardian as Adam defied court orders, undermined Sarah's relationship with Zach, and failed to perform duties imposed by law. Specifically, Adam defied the trial court's orders to 1) participate in mediation, 2) facilitate visits between Zach and Sarah, 3) obtain a Trial Rule 35 evaluation of Zach and 4) procure services for Zach. *See Tr. Vol. 2* at 57, 97, 124-25, 130-31. Adam violated the law when he moved with Zach to North Carolina without first seeking permission from the trial court. *Id.* at 56, 129; *see also* I.C. § 29-3-9-2. Of equal concern was Setlak's testimony that letting Adam continue as guardian would possibly undermine Sarah's relationship with Zach. *Tr. Vol. 2* at 140-41.

[14] Likewise, the trial court did not abuse its discretion in appointing Sarah as permanent successor guardian as nearly all evidence about her was positive. For instance, once she picked up Zach in North Carolina, Sarah immediately reached out to experts to arrange services for Zach, something that Adam was unable or unwilling to do during a fifteen-month period. *Id.* at 58, 140. Sarah tried to maintain a positive relationship between Zach and Adam by arranging visits and regular communication, while Adam had stymied all of Sarah's efforts to maintain a relationship with Zach while Zach lived with Adam in North Carolina. *Id.* at 64, 124-25. Upon arrival in Indiana, Sarah immediately attended to Zach's dental and medical needs. *Id.* at 62-64.

[15] The glowing testimony from Zach's service providers about Sarah also illustrate that the trial court did not abuse its discretion in appointing Sarah as successor guardian. For example, Clark described Sarah's interaction with Zach as "[e]xcellent... she was very on the ball it seemed to me" and that ""she would be in the top of the parents I have met . . . ." *Id.* at 10. Both Martin and Setlak were impressed with Sarah's ability to procure services for Zach. *Id.* at 42, 140.

[16] In arguing that the trial court's ruling was an abuse of discretion, Adam invites us to reweigh the evidence. For instance, he contends that his more spacious, pet-free living quarters, where Zach would have his own bedroom, would make him a better guardian than Sarah. *See Appellant's Br.* at 7. He also claims he would make a better guardian because Zach's grandparents would help supervise Zach, and Adam would ensure that Zach regularly attends church. *See id.* This evidence was before the trial court, and its ruling shows that it found it was outweighed by the evidence that Zach's best interests were served by appointing Sarah as successor guardian. *See In re Atkins*, 868 N.E.2d at 883. The prerogative to weigh evidence belongs to the trial court, not this court, and we will not second guess its assessment of the evidence. *See In re Morris*, 56 N.E.3d at 723.

[17] Affirmed.

Vaidik, C.J., and Riley, J., concur.